HARRIET M. DODD, PLAINTIFF IN ERROR, v. JOHN W. FISHER, DEFENDANT IN ERROR.

Fisher deposited with the solicitor of the complainant the sum of $1,000, to get a postponement of a foreclosure sale for ninety days, upon the understanding that if the property when sold should not bring enough to pay the decree, then enough of the deposit to pay the deficit should be retained. After the expiration of the ninety days, the property was put up for sale and struck off to a bidder who announced that he could not pay the twenty per cent. required by one of the conditions of the sale. The solicitor for the complainant advised the sheriff to let the bid stand. The bidder turned out to be irresponsible, and upon a resale, the property brought a less sum. *Held,* that Fisher's right, under his contract, was to have the property sold after the expiration of the ninety days, in the manner in which judicial sales are regularly conducted; that the sheriff had the right to consult with the solicitor of the complainant in respect to his course of conduct under the circumstances, and that the solicitor had the right to give his advice; and unless such advice was given under such circumstances as to indicate a disregard of Fisher's rights, the deposit of Fisher is not discharged from liability to make good the deficit.

On error to the Supreme Court.

For the plaintiff in error, *Frederic W. Stevens.*

For the defendant in error, *Colie & Swayze.*

The opinion of the court was delivered by

REED, J. This cause was tried before the court, a jury having been waived. The facts proved were these: There was a decree in a suit in foreclosure held by Harriet M. Dodd against Carrie E. Meres and others. The sheriff had advertised the property of Carrie E. Meres to be sold on October 6th, 1891. The sale was adjourned from time to time until December 18th, 1891. On that date, Fisher, for the purpose of affording Meres an opportunity to save the property, made an arrangement for the further postponement of the sale for ninety days. To secure the complainant, who held the decree, against any loss that might result to her from this delay, Mr.

Fisher paid over to her solicitor, Mr. Dawson, the sum of $1,000, The following receipt embodies the terms upon which the $1,000 was paid to Mr. Dawson and held by him:

"Received from John W. Fisher the sum of one thousand dollars. In consideration of which I agree to postpone the sale of premises in above suit for the space of ninety days (90) from the date hereof, unless said sale is ordered to be previously held by decree of this court, with the understanding that if on such a sale of said premises there should not be realized enough to pay in full the decree heretofore obtained, and the costs, in this cause, said one thousand dollars or so much thereof as may be required, is to be applied to make good the deficiency so arising, the balance, if any, to be returned to the said John W. Fisher. It being also understood and agreed that said one thousand dollars is to be paid over by me to Robert T. D. Easton, and that no personal liability for said money or its repayment is looked for or assumed on my part, as I am acting merely as the attorney of all the parties concerned.

"Or in case the said John W. Fisher should at any time during said ninety days, or before a sale, desire to purchase said mortgage and decree, the said one thousand dollars is to be applied on account of the purchase-money thereof.

"Dated Newark, N. J., Dec. 15th, 1891.

"HENRY H. DAWSON, *Att'y.*"

Nothing was done during the ninety days, and on March 15th the property was put up and sold. It was bid for and sold to Michael T. Barrett, as the attorney of a Mr. Chapin, for the sum of $7,450. The sum was sufficient to pay the amount of the decree of Mrs. Dodd, together with the costs and accrued interest up to that time. One of the conditions of the sale was that the purchaser would be required to pay twenty per cent. of the purchase-money at the close of the sale and sign an acknowledgment of his purchase. Another condition was that, in case of any person purchasing and not complying

with the conditions, the property would be offered for sale a second time, and the first purchaser was to reap no benefit therefrom and be held answerable for all loss and expense occasioned thereby. Mr. Barrett signed the conditions, and, when asked for the deposit, said : " We cannot pay it to-day ; we have not got the money."

The sheriff consulted Mr. Dawson, the complainant's solicitor, who was present, and the solicitor told him to waive the payment of the twenty per cent.

Mr. Barrett's client, Mr. Chapin, refused to take the property, and another order for sale was obtained, and on August 23d, 1892, the property was sold to Mrs. Dodd, the complainant, for $6,550. Mrs. Dodd retained the $1,000 deposited by Fisher, to compensate her for the difference between this sum and the amount of the decree.

Fisher sued to recover the sum so deposited, on the ground that Mrs. Dodd is precluded from holding the deposit by reason of the conduct of her attorney, Dawson, at the sale on March 15th. This conduct was his assent that the bid of Barrett should stand without the deposit of the twenty per cent.

This view of the effect of Dawson's conduct was recognized by the trial court, and Fisher was permitted to recover the amount of the deposit.

Fisher may be regarded as surety to the extent of the deposit, that the property, in case of a delay for his benefit for the prescribed period, would bring enough to pay the decree of the complainant. But the duty of the complainant towards Fisher sprung out of the contract contained in the receipt. His express obligation was to delay the sale, so far as he should be able to postpone it, for the period of ninety days. After the termination of that period, a duty was implied to proceed in the ordinary way to have the primary fund applied to the payment of his decree. At least this duty would arise after notice from Fisher that he desired the complainant to so proceed.

There was nothing in the contract which changed in any

way the manner in which the complainant should proceed after the expiration of the period of delay for which Fisher bargained. The machinery for selling the property was to be again put in motion, and if the sale, when made, was accomplished in the same manner as ordinary judicial sales are required to be conducted, Fisher had no ground for complaint.

In conducting a sale of this kind, the officer is bound to pursue the statutory requirements prescribing his duty; he is also amenable to the orders of the court whose decree he is executing, whether those orders are contained in the decree itself or are made during the progress of the cause.

Aside from such statutory or judicial directions, the officer is necessarily invested with a considerable degree of discretion in respect to the time and manner of executing his writ. This discretion is essential to prevent sacrifices of property. Adjournments are, as a rule, discretionary with the sheriff. *Skillman* v. *Holcomb*, 1 *Beas.* 131; *Morris* v. *Woodward*, 10 *C. E. Gr.* 32.

For bad faith, or a clear abuse of this discretion, the officer may probably be held responsible. *Hoagland et al.* v. *Todd et al.*, 8 *Vroom* 544.

But the discretionary power of an officer is not limited to the propriety of making adjournments. In carrying on a sale, complications may arise which will call for the judgment of the officer as to the course of conduct which had best be taken to subserve the interests of the parties interested in the result of the sale. If a purchaser fails to comply with the conditions of a sale, it is optional with the sheriff either to make a resale or to execute the first sale. *Woodhull* v. *Neafie et al.*, 1 *Gr. Ch.* 409.

If a purchaser refuses to make good his bid, the officer may reopen the sale and sell for a less price, and such sale will not be set aside, although the first purchaser afterward offers to complete his purchase. *Judson* v. *O'Donnell*, 14 *N. Y. Sup.* 92.

The sheriff is not bound to accept the bid of an insufficient purchaser. *Den* v. *Zellers*, 2 *Halst.* 153.

In exercising the discretion with which an officer is invested, it is entirely proper for him to consult those for whose advantage he holds his writ. It may be not only proper, but his duty in some instances, to consult primarily the party or attorney who sued out the writ; but he may take the counsel of any party who is interested in the fruits of the sale. He may take the sentiments of any or all such persons into consideration in making up his judgment in respect to the proper course to pursue.

Now, the complainant was, notwithstanding the deposit of Fisher, still interested in securing a good sale of the property. She was compelled to buy in the property at the last sale, to save her decree, although she was secured by the deposit. Mr. Dawson, as her solicitor, had the right to advise the sheriff, and so long as he was counseling in good faith, and his conduct did not indicate a disregard for Fisher's rights, he was acting within the line of his duty toward his client.

If he had released the security which he held, or had directed the sheriff to do so; if, after the bid had been made in conformity with all the conditions of the sale, he had ordered the sheriff to discharge the contract, if that were possible (*Shann* v. *Jones*, 4 *C. E. Gr.* 254), a different question would have arisen.

What happened was this: Barrett had bid and signed the conditions. He then announced that he did not have the twenty per cent. to pay down. His announcement of that fact seems to have been positive and definitive. The predicament which then confronted the sheriff was whether he should allow the bid to stand, although no deposit had been made, or whether he should reopen the sale with an absolute certainty of a less bid. I say an absolute certainty of a less bid, for Barrett was the highest and, in fact, the only bidder.

The sheriff consulted Mr. Dawson, and Mr. Dawson advised that the bid should be permitted to stand. Barrett, a reputable lawyer, had assured them of the responsibility of his principal, Chapin, for whom he was bidding.

Now, because it happened that the bid turned out to be

unenforceable because of Chapin's irresponsibility, that fact cannot affect the question of Dawson's good faith at the time he gave his counsel.   His conduct must be regarded in view of his information and environment at the time, and unless when so regarded it exhibits bad faith toward Fisher, or a disregard of Fisher's rights, there was no breach of duty toward the latter.

The rule adopted upon the trial was more stringent than this, and therefore the judgment should be reversed and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Dixon, Garrison, Lippincott, Magie, Reed, Van Syckel, Brown, Krueger, Sims.   12.